UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| MICHAEL EPSTEIN, et al., | ) | 3:98-CV-0758-ECR (VPC) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| ROBERT BAYER, et al., | ) | |
| Defendants. | ) | |

Before the court is the motion to intervene (#291) by proposed intervenors, Helen Hoover, Keith Hoover, Sharon Rowe, and Barry Rowe ("intervenors"). Plaintiffs, Michael Epstein and Claudia Epstein ("plaintiffs") filed a notice of non-opposition to the motion to intervene (#302), defendants opposed (#303), and the intervenors replied (#306).[1] For the reasons set forth below, the motion to intervene is granted.

**I.   Procedural History**

This is a civil rights action filed on December 28, 1998 (the "underlying action") (#1). After the District Court entered summary judgment on behalf of defendants in September 2000 (#80), plaintiffs appealed that decision, and the Ninth Circuit Court of Appeals reversed the grant of summary judgment and remanded the matter for trial on plaintiff Michael Epstein's equal protection claim (#94). Upon remand, the District Court appointed counsel for plaintiffs, and a second round of discovery ensued, followed by cross-motions for summary judgment, which the District Court denied (#162). The only claim left for trial was the allegation that defendants violated plaintiffs' equal protection rights under

---

[1]Defendants subsequently filed a motion for leave to file a supplemental brief (#315) and an errata (#316), intervenors opposed (#317) and defendants replied (#322). By separate minute order, filed concurrently with this order, this court denied defendants' motion (#323).

the Fourteenth Amendment when they refused to permit plaintiffs, who are married, to visit one another. Prior to trial, the District Court granted plaintiffs' motion for entry of judgment (#259), and ordered the Clerk of Court to enter judgment in the amount of $49,999.00 in favor of plaintiffs and against defendants (#263). Thereafter, judgment in favor of plaintiffs was entered (#264).

Subsequent to entry of judgment, defendants moved the court for entry of a confidentiality order *nunc pro tunc* (#266) pursuant to a May 28, 2003 order of this court (#136). The record reveals that on May 19, 2003, this court held a hearing to consider plaintiffs' emergency motion to compel discovery responses and for costs and attorney's fees. The court granted plaintiffs' motion to compel discovery and denied the motion for fees and costs (#135). The court ordered plaintiffs' counsel to prepare a proposed order in compliance with this court's ruling regarding discovery protocol, and thereafter, plaintiffs' counsel submitted the proposed order (#136). By that order, the court directed defendants to compile a list of all current and former Nevada Department of Corrections ("NDOC") employees and inmates, related by marriage or other family relationship, who requested visitation pursuant to Administrative Regulation 719 ("AR 719") for the period February 25, 1997 through January 1, 2003, and whether those requests were approved or denied. *Id.* The court also ordered defendants to produce visitation rosters from each NDOC institution, to produce grievance logs to identify grievances relating to visitation as described above, and that defendant Jackie Crawford produce all documents maintained in her office concerning such visitation requests. *Id.* The order stated, "All responses and documents produced pursuant to this Order are subject to the earlier confidentiality order entered in this case." *Id.* As it turned out, no confidentiality order had ever been entered.

Since the court and the parties assumed a confidentiality order was in place, defendants produced the documents and plaintiffs' counsel made copies of those files (#266), and plaintiffs' counsel maintained the documents as though such an confidentiality order were in effect. After judgment was entered in this case, defendants requested that plaintiffs either return the confidential documents or provide an affidavit that the documents had been destroyed. *Id.* It was then discovered that although the May 28, 2003 order (#136) referenced an earlier confidentiality order, one had never been entered, and plaintiffs' counsel refused to return or destroy the documents (#266). The court granted

2

defendants' motion for confidentiality order *nunc pro tunc* and directed plaintiffs' counsel to return all files and documents produced in accordance with the May 2003 order and also file an affidavit with the court that he had returned all confidential documents (#273).

Several motions ensued, followed by intervenors' motion to intervene (#291). By this motion, intervenors seek permissive intervention pursuant to Fed.R.Civ.P. 24(b).

## II.   Discussion and Analysis

### A.   Discussion – Permissive Intervention

Generally, Fed.R.Civ.P. 24 is construed liberally in favor of the applicant for intervention. *Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003). "Courts are guided primarily by practical and equitable considerations." *Id.* Applicants seeking permissive intervention must prove that they meet three threshold requirements: (1) the court has an independent basis for jurisdiction over the applicant's claims; (2) they share a common question of law or fact with the main action; and (3) its motion is timely. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). In exercising its discretion, the court must consider whether allowing intervention will cause prejudice or undue delay. *Id.*

Rule 24(b) also permits intervention for the purpose of seeking a modification of a protective order after the underlying action is concluded. *Beckman Industries, Inc. v. International Insurance Co.,* 966 F.2d 470, 473 (9th Cir. 1992). In *Beckman,* the original action between Beckman and International was settled and dismissed, and a pivotal issue in the case was whether certain insurance policies issued by International provided coverage to Beckman for certain environmental liabilities. Discovery included several depositions of International employees involved in the development of the insurance policies sold throughout the country, and as part of the *Beckman* action, the district court issued a blanket protective order keeping all discovery confidential. Beckman and International settled and dismissed the case in 1988. A few years later, the intervenors became involved in state court litigation regarding the scope of coverage of the same International policies, and they moved to intervene in the *Beckman* action in order to move to modify the protective order to gain access to the deposition transcripts.

The court considered whether the requirements of Rule 24(b) intervention for the purpose of litigating a claim on the merits are applicable to limited intervention to modify a protective order in the

3

underlying action to obtain access to depositions. First, the court held that an independent jurisdictional basis is not required in this instance because the intervenors were not attempting to litigate a claim on the merits. *Id.* at 473. "Intervenors do not ask the district to rule on additional claims or seek to become parties to the action. They ask the court only to exercise that power which it already has, i.e., the power to modify the protective order. For that reason, no independent jurisdictional basis is needed." *Id.*

Second, the court found that the importance of access to documents prepared for similar litigation involving the same parties satisfied the Rule 24(b) commonality requirement and stated, "The issue of interpretation of the policy supplies a sufficiently strong nexus between the district court action and the state actions to satisfy the commonality requirement." *Id.* at 474. Third, the court rejected the contention that the intervenors must show "extraordinary circumstances" or "compelling need" before modification of a protective order is warranted, and instead held that "Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation." *Id.* at 475 (citations omitted). The court acknowledged that legitimate privacy interests existed and concluded that such interests can be protected by placing the intervenors in the same restrictions as those included in the original protective order. *Id.* (citations omitted).

### B. Analysis

The court finds that permissive intervention is appropriate in this action. An independent basis for jurisdiction is not required because here, as in *Beckman*, the intervenors do not seek to litigate a claim on the merits; rather, they ask the court to exercise the power it already has – the power to modify a prior order of the court. *Beckman*, 966 F.2d at 473. The commonality requirement is also satisfied. In this action, intervenors are two married couples, and each of the co-plaintiff wives is a former NDOC employee (#291, Ex. B & C). They subsequently married inmates who are incarcerated at NDOC institutions. *Id.* Like the plaintiffs in the underlying action, intervenors allege that they have been denied visitation privileges in violation of their rights of equal protection and due process under the Fourteenth Amendment, among other claims. *Id.* The intervenors seek production of the documents produced in the underlying litigation containing information about other NDOC inmates who were granted permission to have contact visitation, notwithstanding that the visitor was a current or former

4

1 NDOC employee. Intervenors contend that this information will establish constitutional violations under
2 the Fourteenth Amendment. The *Beckman* court concluded that the "importance of access to
3 documents prepared for similar litigation involving the same parties satisfied the commonality
4 requirement of 24(b)." *Id.* at 474. The court concludes that intervenors have satisfied this requirement.

5       As to the timeliness of intervenors' motion, defendants make two arguments. First, defendants
6 contend that one can draw an inference from *Beckman* that intervention for the purpose of obtaining
7 discovery in the underlying action is only proper if the intervenors have survived a motion to dismiss,
8 discovery is underway, or the litigation has reached some other point that would indicate the case will
9 proceed. The court does not read *Beckman* so narrowly, since the court expressly rejected the notion
10 that intervenors must show "extraordinary need" or "compelling circumstances" before intervention is
11 allowed and a protective order is modifed. *Id.* at 474 (citations omitted). Extending defendants'
12 argument to its logical conclusion, the intervenors would have to wait until disposition of a motion to
13 dismiss, commence discovery, and if the defendants refused to provide the discovery already compiled
14 in the underyling case, they would then move to intervene in this action. If intervenors did so,
15 defendants could reasonably oppose intervention on the ground that the motion was untimely. This
16 court understands the holding in *Beckman* to be that if the intervenors can satisfy the permissive
17 intervention requirements under these unique circumstances, they should do so expeditiously, which is
18 what intervenors in this action have done.

19       The court construes defendants' second argument as a timeliness issue, since they correctly point
20 out that this court earlier entered an order that plaintiffs in the underlying action return the disputed
21 discovery to defendants (#273). However, at the time the court issued that order on May 4, 2006, the
22 intervenors had not filed their motion to intervene, which they did on July 27, 2006 (#291). Since
23 plaintiffs in the underlying action have moved for reconsideration of this court's order, and the parties
24 have maintained the *status quo,* the court does not believe it is prevented from considering the motion
25 to intervene. The court concludes that intervenors' motion is timely.

26       Apart from the analysis of permissive intervention prescribed by Rule 24(b), the court must also
27 consider whether intervention would cause prejudice or undue delay. *Donnelly,* 159 F.3d at 412. The

defendants do not contend that intervention will cause undue delay, but correctly point out that even though the parties and the court believed a protective order was in place in the underlying action, no such order was ever entered. Defendants express legitimate concerns that the discovery at issue contains confidential information concerning NDOC inmates and employees which would not otherwise have been produced absent a protective order.  In addition, the court may well have refused to compel production of the documents had plaintiffs in the underlying action not been represented by counsel, since NDOC inmates cannot have access to information about other inmates or NDOC employees. This leads to another concern that if the court grants intervenors' motion, defendants will be inundated with motions to intervene from other NDOC inmate-plaintiffs who will attempt to conduct discovery based upon *Beckman*.  Defendants finally contend that intervenors' counsel utilizes an NDOC inmate as a paralegal, and that there is a risk that if this discovery is produced, it will fall into the hands of an NDOC inmate.

      The court believes adequate safeguards can be implemented to resolve these legitimate concerns, particularly since the parties are all represented by counsel.  Counsel can meet and confer and prepare an appropriate stipulated protective order to address all security and confidentiality concerns, including a prohibition against allowing any inmate, whether a party or not, to have direct or indirect access to the materials produced.  As to defendants' concern that this intervention will open the floodgates for other inmate litigants to file motions to intervene, the court doubts this will occur. Unlike the vast majority of inmate civil rights cases, the inmate plaintiffs in each of these actions is represented by counsel, which is why the plaintiffs in the underlying action were provided the documents in the first place.  Had the underlying action been a typical *pro se* inmate civil rights case, it is extremely unlikely that the court would have directed defendants to produce the discovery and documents at issue in the underlying proceeding. For these reasons, the court believes that a protective order can address defendants' concerns.

///

///

### III. Conclusion

Based upon the foregoing,

IT IS ORDERED that intervenors' motion to intervene (#291) is **GRANTED**. Although procedurally improper, the proposed intervenors filed a complaint in intervention (#290) separately on the same date as the motion to intervene (#291). However, because the complaint in intervention (#290) is not signed, counsel shall have leave to refile the complaint in intervention on or before **November 13, 2006**.

IT IS FURTHER ORDERED that intervenors, plaintiffs, and defendants shall meet and confer to prepare a stipulated protective order, and they shall lodge such proposed order with the Clerk of the Court no later than **Monday, November 13, 2006.** If counsel cannot reach agreement on a proposed protective order, they shall file a notice with the court no later than **November 13, 2006**, and the court will decide plaintiffs' motion to unseal dispositive pleading (#278).

DATED:   October 24, 2006.

*Valerie P. Cooke*
_____
UNITED STATES MAGISTRATE JUDGE

7